Missouri, Kansas & Texas Railway Company of Texas
v. J. T. Quarles.

Decided November 11, 1899.

**1.   Master and Servant—Defective Machinery.**

Plaintiff, a railway employe, was not guilty of contributory negligence and was entitled to recover against the company despite the rule as to assumed risks, where, being a machinist's helper, he was directed by the foreman, at night, to tighten the cap on an engine about ready to start out, and from which cap steam was escaping, and in so doing was injured by reason of the cap blowing off because of defective threads in the screw that held it.

**2.   Same—Repairer's Risk Not Assumed.**

The duty which plaintiff was directed to perform was not to repair a defective cap and screw, but merely to tighten the cap, and at a time when the pressure of steam was on.

**3.   Same—Degree of Care.**

It was not error for the court to charge that "it was the duty of the defendant railway company to use ordinary care to have the engine in question in a reasonably safe condition."

Appeal from Denton.   Tried below before Hon. D. E. Barrett.

*T. S. Miller* and *Head, Dillard & Muse,* for appellant.

*C. B. Randell,* for appellee.

Conner, Chief Justice.—A statement of the nature and result of this suit, sufficiently full perhaps to illustrate our views, is as follows:

On August 10, 1898, appellee instituted this suit against appellant for actual damages in the sum of $30,000 alleged to have been sustained by appellee by reason of personal injuries received on the 27th day of June, 1898, by reason of the negligence of defendant and its agents and

servants, the petition alleging, among other things, that plaintiff, at the time of his injury, was in the employment of defendant as a machinist's helper, under the direction and control of T. S. Goldsmith, representing defendant, with full control over plaintiff in the performance of his duties; that plaintiff was also under the control of E. E. Booth, machinist, representing defendant; that on the night of June 27, 1898, when it was dark, plaintiff was ordered by said T. S. Goldsmith to tighten a cap on a certain engine of defendant with a wrench; that the check and cap, and the threads and parts contiguous thereto, were old, defective, unsafe, and improperly fitted and placed, and were insecure, and plaintiff was required by said Goldsmith and Booth to go upon said engine and tighten the cap, as aforesaid; that plaintiff, without knowing the danger of such position, obeyed the orders, as it was his duty to do, and undertook to do the work required of him, and while so engaged the cap was blown off, the wrench was thrown from plaintiff's hands, and he was struck and injured, said injuries being serious, painful, and permanent; that in the furnishing of said engine in the condition in which it was at the time plaintiff was injured, defendant and its agents and servants were guilty of negligence and want of ordinary care; that the dangerous and defective condition of said engine, and the danger of plaintiff's position, were well known to defendant and its agents and servants, or could have been known by the use of ordinary care, but were unknown to plaintiff.

Appellant answered by a general denial, a plea of contributory negligence on the part of plaintiff and that of his fellow servants, and that the injuries, if received, resulted from one of the risks assumed by plaintiff, and that plaintiff had full notice of the defects, if any, in the engine, or by the exercise of ordinary care would have had full notice in ample time to have avoided the injury.

The cause was tried, resulting in a verdict and judgment in favor of plaintiff and against defendant, on March 29, 1899, for the sum of $12,000. Motion for new trial was duly filed, was overruled, and the case appealed to this court.

The evidence is sufficient to support the allegations of appellee's petition hereinbefore recited, it being also admitted in the record that the injuries then and there inflicted, as shown by the evidence, were sufficient to sustain the verdict and judgment, if appellant was liable under the facts.

The cap that appellee was endeavoring to tighten is a piece of brass that screws down into what is called the check. The check connects the water pipe with the boiler of the locomotive. The water pipe is a pipe extending along on the outside of the locomotive boiler horizontally, above what is called the running-board, this pipe connecting with a hose from the tender, and through which is injected water into the boiler. This check opens into the boiler at right angles with the pipe, with a short section extending up perpendicularly. At its upper end the check

is grooved or threaded, into which the cap is made to screw. The check, when open, permits the escape of steam. The cap in question, when screwed down, prevents the escape of steam, the evidence tending to show that the full pressure of steam from the boiler was on the cap when tightened.

Appellant, after having procured the wrench, as directed, entered the engine through the cab, walked out on said running-board, and began to tighten the cap as before stated. At the time of doing so he noticed that steam was escaping from the cap. He had been told by Goldsmith not to delay the engine, as it was scheduled to go out in twenty minutes. Booth had gone from the roundhouse with appellee to the engine in question, but he gave no direction. Appellee had been in the employment of appellant as a machinist's helper for several years, and felt himself capable of doing the kind of work that Goldsmith required him to do, and therefore did not request any advice or assistance from Booth. The only evidence of a defect in the locomotive in question related to said cap and check.

The evidence, however, tended to show that on the day before the injury one Harp, a machinist in appellant's employ, and not a fellow servant of appellee, had been directed to repair the cap and check in question, and that he did so in a manner and under such circumstances as to leave the threads on the check injured and insecure, by reason of which the cap was insecurely fixed in place when screwed on, contribwhich the cap was insecurely fixed in place when screwed on, and was thereby guilty of negligence as alleged.

The evidence, while perhaps conflicting, was also sufficient to support the finding in appellee's favor that in the performance of the act he had been so directed to do he was without negligence of his own contributing to his injuries.

The principal questions raised by the assignments of error relate to charges given and refused and arise out of the construction to be given the facts.

It is insisted in behalf of appellant that it was the duty of machinists and their helpers to repair and make whole injured or defective apparatus in and about locomotive engines, and that the rule of law applied by the trial court in the charges given, to the effect "that it was the duty of the defendant company to use ordinary care to have the engine in question in a reasonably safe condition," was erroneous, citing Allen v. Railway, 37 Southwestern Reporter, 171, in which Judge James, in delivering the opinion, uses the following language: "If the thing furnished the servant to work upon or with be a tool, or some instrument, or, say, a completed structure, the rule applies that the master is liable for defects therein which reasonable care for the safety of the employe would have disclosed. But if it be a part of the very thing the servant is set to work upon to repair or finish, the latter is presumed to have

notice of its unfinished state, and to assume the risks thereof, unless the master has done something or does something which increases this risk."

In the case mentioned the following quotation from the opinion in Carlson v. Railway (Oregon), 28 Pacific Reporter, 497, also appears: "Where a servant is employed to put a thing in a safe and suitable condition for use, it would be unreasonable and inconsistent to require the master to have it in a safe condition and good repair for the purpose of such employment."

That the rule of law as thus stated is sound when applied in a proper case we have no doubt, but we do not think it the rule that should be applied to the facts of this case. Appellant was not directed to repair a cap or check stated or known to be defective, but to tighten a cap. The evidence tended to show that the threads on the check had been injured or left in defective condition by Harp, one of appellant's machinists, the day before. *He* was sent upon an errand and employment to which the rule invoked would doubtless be applicable in case of injury to him while so engaged. Appellee, however, was directed to do an act that the testimony shows involved nothing more than manual labor. The testimony wholly fails to show that it was appellee's duty to discover and repair a cap or check upon which the threads had become, as stated by the witnesses, "crossed" or "stripped." This was a labor requiring the skill of the machinist, and we may safely conclude was outside the domain of appellee's duty or employment.

The fact that the cap needed tightening, or that steam was escaping therefrom, was not a necessary indication that the threads on the cap or check had been injured and were defective, else why did appellant's foreman, Goldsmith, direct him to tighten said cap? The evidence showed that the threads on the cap or check could not be repaired with full steam up, the pressure of the steam in the boiler being in full force on said cap when in place, as before said, and Goldsmith knew the engine was on the eve of taking out a train, and therefore necessarily "steamed up." Goldsmith evidently thought, and appellee had the right to think, that all that was necessary was merely to screw the cap down until tight, and that the check and cap were in condition to render it reasonably safe to do so. Harp, the machinist, as to appellee, represented the master. In the repair of the check or cap he had no legal right to do or omit to do anything that increased the risk in the performance of the act of appellee in question, and as the evidence, in our judgment, supports the inference of negligence in this particular, we think the trial court was without error in the charges given, and in refusing instructions presenting a different theory.

Complaint is also made of the court's charge in many other particulars. We have carefully examined it in the light of the objections thereto urged by the learned counsel appearing for appellant, and we have failed to find any reversible error therein. The court seems to have very carefully submitted the issues of assumed risk and of contributory negligence arising under the evidence, and the general charge, with special charges

given as requested, was exceptionally fair and full, and not, as we think, liable to the objection that it was confusing, misleading, or upon the weight of the evidence.

The evidence, in our judgment, supports the 'finding in appellee's favor on all issues, and no reversible error appearing, the judgment below is in all things affirmed.

*Affirmed.*